Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, we are prepared to hear argument in 19-4318 United States v. McCauley. Mr. Amos, whenever you're ready, sir. Thank you, Your Honor. May it please the Court, my name is Christopher Amos and I'm here on behalf of Logan McCauley. Logan was convicted under 18 U.S.C. 2251 and sentenced to a mandatory 15-year prison sentence because of a single 19-second video. Well, is that the only count? There are no other counts, are there? Yes, that's correct, Your Honor, there are no other counts. 2251 makes it illegal to engage in sex for the purpose of making a video. The statute does not read for a purpose and it does not read for one of ten different purposes. Yet despite the plain language of the statute, this is how the jury was instructed and what the government argued in closing. This is not the law. This is a rewriting of the statute and it violated Logan's right to due process and deprived him of the right to a fair trial. The government's argument in response is essentially that there is no real difference between the purpose and a purpose. But that is not the language of the statute. And there is not a single case from any court anywhere holding that the purpose is the same as a purpose or that the purpose is the same as one of ten different purposes. Every court that has looked at this issue has begun and ended its analysis by beginning with the plain language of the statute, which reads the purpose. Some courts, including this one, have analyzed the purpose from the point of view essentially of what it doesn't mean. It doesn't mean exclusive purpose. It doesn't mean single-mindedness. But no court, and not this one especially, has ever specifically addressed the de-purpose language and held that de-purpose is the same as a purpose or that de-purpose is the same as one of ten different purposes. Other circuits, like the Second and the Eighth, have understood de-purpose from the point of view of what it does mean. In their view, in this context, it means dominant purpose. And dominant purpose, again, is in no way similar to a purpose or one of ten different purposes. The dominant purpose standard was first articulated in the Ferrar case in the Second Circuit and then followed in 2019 in Rappenger by the Eighth Circuit. It was assumed to be the proper standard by all parties in the United States v. Torres in the D.C. Circuit. And the Eighth Circuit recently reaffirmed this proper standard in the United States v. Fortier, decided April 15th, and the United States v. Tromel, decided August 21st. This court, the United States v. Thompson, decided on April 6th, 2020, found that, quote, significant and motivating purpose informed the jury of its controlling legal principles. And not three weeks ago, in the United States v. Hewlett in the Eastern District of Virginia, Judge Ellis instructed the jury in a 2251 case on motivating purpose over the government's specific request that the jury be instructed on a purpose. And the instruction in our case, the government is required to prove the production of a visual conviction was a purpose of engaging in sexually explicit conduct. So are you seeking here a new trial under an appropriate instruction, or are you saying to us that if you read the statute the way you would have us read it, which is for the purpose, that the evidence is insufficient simply as a Rule 29 matter to convict this individual? I'm actually saying both, Gerard. Thank you for the question. I am saying 100% that the Rule 29 should have been granted in this case. If you were to take Mr. O'Leary McCauley's name and put him in place of Palomino Coronado and substitute video for photo, this case is essentially on all fours, except Palomino's Coronado facts will work in this case. So I am, in fact, asking this court to find that there is no evidence to support the verdict that Mr. McCauley engaged in the sex for the purpose, the dominant purpose, a purpose, no matter what standard the court adopted, for the purposes of videoing that sexual activity. There is no evidence to support that. But as a legal matter, the jury was instructed in this case in a way that rewrote the statute. The statute does not say a purpose. It says the purpose. Lawyers can disagree about what the purpose means, and I'm happy to take questions on that, but the purpose does not mean a purpose. They are different words meaning different things. And so at the very least, Mr. McCauley needs a new trial with the proper instructions. But the reality is there is no evidence to support the conclusion that he engaged in sex for any purpose in order to video it. Thank you. To reach a broader audience, was there any distribution or amplification of this video? What happened to it once it was taken? It was just... Your Honor, I can tell you, Your Honor, that there was no distribution of the video at all. The government called a witness to the stand, the detective in this case, who said that there was no evidence it was distributed, shared. There was no evidence it was ever viewed again. There was no evidence that anybody other than the defendant saw the video. There was no evidence that he ever tried to give it to anybody, that he tried to distribute or otherwise post it anywhere. And when the detective in the state prosecution that was fully underway came to investigate, Mr. McCauley voluntarily told the detective about the existence of the video, that they would never have found it. They weren't even looking for it, except he offered it to them because he thought it was something they should know. But he made no effort to distribute it, share it, reproduce it, anything like that. Okay, maybe I've misunderstood, Judge Miles, maybe I've misunderstood the record. I thought that there was evidence that hours after he filmed the video, he told his friends about it. A jury could reasonably infer from the quick disclosure of the video that he planned to send it out. Further, before the video, he took a series of photographs of himself and NC in bed. After the video, he took another photograph of himself and NC, in which her naked body is exposed. So, when you keep saying there is no evidence, maybe there isn't conclusive evidence, but I'm not sure that really reflects what's in the record. Well, I think, Your Honor, it's an excellent question. I think it's important that we keep in mind, that the intent has to precede the act. It's the intent to photograph or video which has to precede the engagement of the fact. Well, with respect to that, there's a pause during the time, right? During the time when the video is being taken, there's a pause where he talks to her, gets her permission, if you will. I can look at the record again? Well, the way that I look at the record, Your Honor, the way that it appears to me, is that what he told the detectives was that they were in the middle of the sexual act. And in the middle of the sexual act, he just grabbed his phone and said, is it okay if I take a photo or I'm going to take a video, is that okay? Turned on his iPhone, took the 19-second video, and turned it off. This is with a 7-year-old child, right? No, Your Honor, that's probably in the criminal. This is with a 13-year-old girl who, by all intents and purposes, appears to be older than she is, given her physical structure. I understand that that's not in the criminal defense. But in this case, the record does reflect, Your Honor, that they engaged in sex four or five times over a two-day period. That this was maybe the third time they had sex. And there was a pause where he said, can I photograph this, is that right? I don't believe that there was a pause, Your Honor. There was no pause, but they are going forth and he just has his camera on, he must be trying to pause the phone. Well, that's actually what happened. His phone was next to his bed, Your Honor. And they were, I don't have a graphic to see, but they were in the middle of engaging in sexual intercourse. And he didn't stop what he was doing to go someplace to grab his phone. He was mid-act. Mid-act. He was mid, but he hadn't finished act. But then he asked for permission. But to your question about whether there was a pause, the only pause was for him to reach for the phone, turn it on, and engage it. There was no pause. Well, the jury could construe that as a pause. The jury could very well have construed that as a pause. And we have to take the facts in the light most favorable to the prosecution at this stage, correct? That is what, you have to take the evidence in the light most favorable to the prosecution. This court does not have to give any deference to the trial court's decision about whether Rule 29 is appropriate. But I think it's, I do not believe the record reflects there was any meaningful pause. That it did rise to an inference that there, Mr. McCauley engaged in any kind of reflection about what he was doing. It is somebody who is in the middle of the sex act who grabs his phone and says, I just kind of grabbed my phone, turned it on, is it okay, like a 19-second video, and stopped. And that's the only time he reported any portion of their sexual activity. Even though there were five, four or five others of them. According to his testimony, there was conversation. We were in the middle of sex and I asked her if we could do the video. Well, I didn't really ask. I just kind of grabbed my phone and she goes, what are you doing? And he told her he was going to make a video and she goes, okay. I said, yes, and I think that's exactly what happened. And that doesn't indicate reflection to me. There doesn't seem to be a pause or a stop to talk about it. What about the testimony, excuse me, what about the testimony from the Apple representative that he had to spend time opening the phone and setting it to cord in order to make the video? Your Honor, I think that that is exactly on all fours as Palomino told me. What is cord the way I read Palomino? I'm happy to have you give me that answer. But first, doesn't that indicate that a certain amount of time had to take place? A pause, if you will. You can say no, but I think it does. But you now can talk to me about Palomino. Yes, Your Honor, I'm sorry. I do not think it indicates the kind of reflection necessary to satisfy the specific intent of the statute. Does it take time to open up the phone, find the camera, turn it on, take the photo? It does. All of that is indicative of the intent to intentionally take the photo, that this was not an accident, that it didn't happen by chance, there wasn't a secret camera. That all goes to what did I do in order to record the sex act? It does not go to, in my opinion, the intention of engaging in the sex act in order to video it. It definitely demonstrates voluntariness and knowingness, but it does not demonstrate, in my opinion, the fact that he intended to have the sexual activity in order to then record it. It is important that we, I think that he's in the middle of this, Your Honor. He's in the middle of it. Counsel, is it your position that he had to have the intent before they engaged in any sexual conduct? He couldn't form the intent in the midst of it? I'm going to answer that question two ways, Your Honor. One, Palomino uses the word initiated. That the government must show that they initiated the sexual activity with the purpose to record it. Can there be circumstances where somebody's motivation changes midstream? Absolutely. But there's no indication that's what happened here. All that we have indication of is his physical, manual working of the phone in order to record a sex act that was already going on. If his intention had changed in the middle, you would see, I would think, evidence of that. Positioning. Say this to me while we have sex. I'm going to change the angle. I'm going to move the lighting. You would see that he had now transferred from one intent to another. But there's no indication that's what happened. What it would indicate, what the record reveals is that he was in the middle of it, had this kind of spur-of-the-moment idea to just grab the phone and take a picture, and he did it, and that's what happened. One thing, and just trying to make sense of the statute, all of these verbs, employs, uses, persuades, induces, with the intent. There's a specific intent statute, and it has a broad sweep, but the sweep is not infinite. It doesn't sprawl over everything, and when I look at the verbs and with the intent, it seems to me to indicate that the intention of producing a visual depiction has to form before the, prior to the initiation of the sexual encounter. In other words, you induce and you entice with the intent, but all of that speaks sort of to the future, and it kind of indicates, and you could read the statute to indicate that the intent has to exist prior to the initiation of a sexual encounter, that it can't form suddenly during a period of, or in the midst of sexual arousal. Your Honor, that is how I read the statute as well. Counsel, in response to my question not more than five minutes ago, you said exactly the opposite. You said you did not maintain that position, that intent could become an issue in the midst of the sexual act. So are you eschewing that earlier answer? What's going on? What I'm saying, Your Honor, is that I believe the intent has to form prior to the engagement of the sexual act, prior to the initiation. And what I meant to say to Your Honor, if I was unclear, I apologize, is that, and it's what we put in our brief, that the intent has to precede the act. Can someone, to Your Honor's question, could you begin with one intent and then transfer to another at some point during it? You could. But then you would essentially have two separate sexual acts. You would have one where you went into it with no intention of videoing it, and then you have another separate one where you would say, yes, actually, this part I am going to. So does it have to be… Excuse me. I don't think that is, and I don't think your answer to Judge Wilkinson was correct. Because Judge Wilkinson posed a quite reasonable question, that this statute requires that before you initiate any sexual conduct, you have to have this intent. And we said, yes, Your Honor, that's the way I read the statute. But in fact, you are saying that in the midst of sexual conduct, you could change your intent. Or we could have no evidence of intent to violate this statute when the sexual conduct is initiated. But if we have in the midst of it intent to violate this statute, that would satisfy the statutory definition. For example, let us take a hypothetical that is not your case, which is the case of someone who in the midst of exactly the same facts, but in the midst of the conduct, sets up a big projector and points to it. And says, now I'm going to, or points to the big projector that's set up and says, now I'm going to videotape this to distribute. That would be an indication of intent to violate this statute in the midst of the sexual act. Not before, but in the midst of it. There is no talk of that, no pointing to anything before you initiate sexual conduct. Your Honor, if I may, I think that I am looking at it in a slightly different way than you are. To me, those are two separate events. Separated by a moment of reflection and pause where somebody stops to take a, like in your example, to set up a video camera or a big screen TV so they get recorded. Or take out their cell phone, it takes them, it takes me about three minutes to get the camera working. Yes, I don't believe that. That would be a sufficient pause. I think there could be evidence, Your Honor. And I don't think that I'm being inconsistent. I think that those, I'm looking at those as two separate acts. The one that you start with and one you pause and then another one that you begin with. So both of those ways are... Just, and I will let you, I promise you, I'll let you go. So then in response to Judge Wilkins' question, you're saying that yes, there has to be intent before. But the sexual conduct could have begun before the intent. And then there would be a pause or something that indicated there was intent and that would satisfy the statute. Correct? I think that's a fair way of looking at it, Your Honor. Okay, thank you. Yes, Your Honor, thank you. But I think it's important that we talk about the purpose involved in it. It is the purpose. And whether the court is satisfied with the Rule 29 argument, there is no question that Mr. McCauley was given a statute. The judge rewrote the statute. He rewrote the statute from D purpose to A purpose and essentially allowed the jury to convict Mr. McCauley if they considered that he had 1% of his intention in engaging in a sexual activity or continuing to engage in a sexual activity was to make a video of it. That's not the statute. The statute doesn't say A. It doesn't say 1 of 10. It doesn't say 1%. The question I keep pushing is that if the jury were properly instructed, I'm just confused because I'm not sure that the evidence is there to convict on a proper construction of the statute. I have my questions on that particular point. Your client has behaved very badly, and I hold no grief for the kind of conduct that he engaged in. The conduct is surely prosecutable under statutes targeting sexual abuse, sexual assault, child pornography statutes. There are several state and federal laws that would encompass this, and Judge Ellis said, well, this is a case that should be brought in state court, and probably so. The question I have is all these other statutes do clearly allow criminal sanctions for what was done here. My only question is this particular statute, which is broadly written with all of those verbs, but the breadth of it still stops short of being infinite, and I worry about just giving it a very broad and open-ended construction. You know, when I read the statute, I guess what I'm trying to say is when I read the statute, it seems to me it was aimed at something other than what took place here. That's just the way I look at the text, that this is not what Congress meant, an act, a single act between two people in the middle of which it's filmed but apparently not distributed and even given to the police. You know, Congress can cast a wide net, but I'm not sure looking at this particular statute that Congress aimed, I don't think he entered this relationship or engaged in this sexual act that he had any kind of prior intent to produce visual depictions of sexually explicit conduct. I just wonder whether this is the right statute for this kind of thing. There are probably plenty of other statutes that get at it, but this one I'm not so sure about. Your Honor, I would agree with you, and I would say that the only way this fits under the statute is if you change the words of the statute. If you rewrite the purpose to mean a purpose or one of ten or one percent, the purpose has meaning. Congress chose this deliberately. They could have said a, they could have said any, they could have said any number of things, but they said d, and the only way Mr. McCauley was convicted is because the judge rewrote the statute, changed d to a, and allowed the government to argue one in ten, which could be one percent. I agree with you in that way completely. The focus of this case, the focus of this statute is not this kind of behavior. It's not this kind of conduct. All right, thank you. Do you reserve some time for rebuttal, and let's hear from the government on this. Thank you, Your Honor. May it please the Court, my name is Alex Bereng, an assistant U.S. attorney, and I represent the United States. I also serve as one of the trial counsel in this matter. Based on the words and deeds of the defendant before, during, and after the creation of the video at issue in this case, the jury correctly found him guilty of production of child pornography. The government has used overwhelming evidence of the defendant's specific intent at trial, proving that one of his purposes in having sex with the minor was to create a video of that sexual conduct. The jury, moreover, was properly instructed. To understand the meaning of the statute, we must start, as U.S.B. Bell instructed, with the plain language of the statute. And after an ambiguity or clearly expressed legislative intent to the contrary, the statute should be given its plain meaning. Here, the dispute is over the language for the purpose. Now, Congress did not differentiate among the relative priorities of a defendant's actual purposes. They could have qualified that language. They chose not to. And if Congress wanted to qualify that language, they could have said but for, for dominant. The fact of the matter is that the common, ordinary understanding of for the purpose means for a purpose. It doesn't mean exclusivity of purpose. Now, the defendant seems to be arguing mainly at this point for a dominant purpose test. But the problem with the dominant purpose test is that it has been rejected by this circuit, albeit in an unpublished decision, Thompson, saying that the theory of defense instruction requested there, in which they wanted the instruction to be that the government must prove prevailing or most influential purpose, was not a correct statement of law. Thompson is persuasive. Your friend there for the defendant says you're jealous, even use the dominant, dominant purpose or primary purpose. A couple of weeks ago, the defense counsel, I read to say, has misstated the record there. The Hewlett case, which the defense counsel referred to, was an instruction that the government agreed to. It was not an instruction that was objected to. So I don't think under Massaccio that there should be presidential value in the fact that Judge Ellis adopted the agreed upon instruction in that case. Well, why did the government agree to it there? I was not involved in that case, so I do not know the particulars of that. Was it the United States Attorney's Office that was representing the government? Yes, Your Honor, it was the same office. Same judge. Same judge, that's correct. But, like I said, I was not involved in that case, so I don't know why there wasn't a specific agreement by our office to that language. Well, you know, when the United States comes in front of us, I expect that there is one, they speak with one voice. And so when the United States Attorney's Office in one district tells us something, I expect it's the same result to be followed by the United States Attorney's Office in another district. When it's the same United States Attorney's Office, I mean, maybe that was just an accommodation, but it seems to me it wouldn't have been too difficult for you to find out what the reason was for this. You know it was an issue in this case. I would submit that perhaps one difference is Thompson had been published at this point. And so there was a clearly approved Fourth Circuit instruction in that case, which we did not have the benefit of when we prosecuted Mr. McCauley. That said, our view is that that language that was given in Hewlett and also in Thompson was approved, is not all that language is necessary. And the reason for that is that the dominant purpose... Was that language primary purpose or dominant purpose? What was it? That language was, I believe, a primary purpose, a motivating purpose test. A motivating purpose. Correct. Do you know that? Are you know that for sure? I'm looking at the, I have a copy of the jury instructions. I'm looking at them right now. It says the jury was instructed, it is sufficient for the government to prove that one of the defendant's motivating purposes, engaging in sexual activities of minor girl one, was to produce a visual depiction. A motivating purpose. Correct. So your United States Attorney's Office and the judge have changed their position on this case when it was tried to what was given three weeks ago or two weeks ago in what you call the Hewlett case? That was in the United States Hewlett, that's correct. Perfect. So what concerned me here was that this... The application of the statute here, it's not the same thing I realized, but it seemed to me to be sort of getting closer and closer to interpreting this statute as a bit of a statutory rape case, because here the defendant, as I understand it, didn't have any specialized recording or lighting equipment, and he didn't give the minor any instructions, and he didn't conceal the recording activity, and he didn't take numerous photos, and I don't think he ever shared them online, and he volunteered the video to law enforcement the day after the video was made. So I put some emphasis on, or at least I looked at the word producing, and I'm wondering if production involves something a little more elaborate or a little bit more sophisticated than what this particular defendant produced. This activity, it's not the same as a statutory rape statute, to be sure, but it seems to be getting, it seems to be approaching it, and it just seems that the statute contemplates, first of all, I have the question of whether the statute contemplates prior intent, and I think there's a way of reading it that it does, and the word producing seems possibly to contemplate something a little more sophisticated and elaborate than took place here. When I put it all together, I'm just having trouble matching the language of the statute and the purpose of the statute with what happened. But I don't know why, as Judge Ellis suggested, this could not have been prosecuted as a state court sexual assault offense. He suggested it should have come in state court where the application of the statutes would have been less problematic than this one. This statute has a real purpose, and it serves a very important purpose, and that is people who are sort of in the business of setting up some kind of operation to produce visual depictions of sexual conduct by minors, some kind of operation with some kind of specialized equipment, and I'm just not sure that happened here. It seems so much more spontaneous, and I don't know why. There's so many non-problematic ways of going at this misconduct, and I still don't know why this particular provision was chosen. I've got an idea why it was chosen. Of course, counsel can tell you whether it's right or not. It's easy to prove. It's written sort of as a strict liability statute, and it has a mandatory minimum of 15 years. Which this young man received. He's serving a mandatory minimum sentence of 15 years right now. Isn't that correct? Yes, he did receive a 15-year mandatory minimum sentence. Yeah, so that's the reason that the U.S. Attorney's Office would bring it in the federal court and prosecute, because of that mandatory minimum. Is that right? Sometimes when you swing for the fences, you can strike out. It just doesn't bear on the legal issue here, but a mandatory minimum of 15 years for this? This doesn't bear on the statutory language that we're discussing, but it seems harsh. In this case, to the extent the court's asking about the federal interest in prosecuting Mr. McCauley, as reflected in the pre-sentence investigation report, which Judge Ellis adopted, Mr. McCauley, since he was at least 22 years old, had been engaging in online sex chats with minors. You all put some of that in evidence, didn't you? I mean, 404B kind of stuff. We did not put that into evidence, because of the court's restriction on the defense getting in the sake of age, and because that was excluded. Okay. And the sake of age, Judge wrote for you that the sake of age was not a defense. That's correct. And the young lady had to be less than 18, correct? Correct. And the sake of age was not permitted as a defense, and you have authority for that. But if she had been 18 or 22, is what she told him, she told him she was 22 and she had two children, and she was a stripper. If she had... If what he was told was true, or if it was in the evidence and the jury believed it, and he relied on it, there's no crime at all. Isn't that correct? I disagree with that, Your Honor. Well, no crime under this statute. I disagree with that, Your Honor. It's the fact that she is under 18, it doesn't turn off... No, no, no. No, if she had been 22 years old, it would not be a crime. Yes. Yes, Your Honor. If she's over 17, it wouldn't be a crime. Over 18, Your Honor. Over 17. I thought... 18 or older, yes. 18 or older is no crime. Over 17 is no crime. And if she's less than 18, it's a 15-year mandatory medical. That's correct, Your Honor. And you can't use age as a defense. That's correct, Your Honor. And it goes back to... No, Your Honor, I disagree with that, and I would point you to legislative history here. As this circuit has recognized, Congress has enacted a comprehensive regulatory scheme that's designed to prescribe child pornography and designed to prescribe all of it. The concern that the Supreme Court has had and Congress has had is that child pornography is a permanent record of abuse, and that is... I don't disagree with any of that. I don't disagree with any of that, and I don't disagree that there are crimes in the state courts of Virginia and probably West Virginia that are violated, and it might be able to get a real long sentence, maybe a life sentence. I don't know. But this has a mandatory 15 years minimum if she's 17, and it's not a crime at all if she's 18. That's correct, Your Honor, and the purpose of that is as the hands-on offender, a defendant like Mr. McCauley has the ability to interact with his victim. He rode in a car with his victim for 3 1⁄2 hours, and he could ascertain or ask questions about age if he had any questions. I know defense counsel represented that the victim looked older. I would encourage the court to look at the victim. I would submit that she does not look anywhere near 18, and she looks clearly to be a 13-year-old. You know, one of the questions I always ask myself is, where do you do the greater damage? Is it in affirming or reversing? And if we reverse here, I don't see that the basic purposes of this statute would be compromised one iota. I think that the production of child pornography would still, that this statute would still cover the mine run of cases and would still cover the vast, vast majority of instances where child pornography is produced. So I don't see that a reversal threatens the compromise of the statutory purpose. On the other hand, an affirmance risks throwing the doors wide open and allowing prosecutors to slam 15-year minimums on a 22-year-old person or even younger for behavior which could be construed here as a spur-of-the-moment kind of thing or relatively innocuous in terms of what the statute is really aimed at. And so I wonder why the greater danger isn't the imposition of 15 years mandatory minimum for people 20 years old. That just, it doesn't sit well with me. And we, this statute, as I say, there are ways of interpreting it that give broad effect to the statute, broad effect to the statute, without just completely creating a wide-open field. That's the problem. I always say, well, what's going to happen if I, down the road, if I vote to reverse here, and what's going to happen down the road if I vote to affirm here? And this, when I balance it off, I think affirmance carries a somewhat greater danger. Your Honor, if I may address that point, I think reversal here would disregard congressional intent here. The intent was to stamp out all instances of child pornography. And I think there's a fact pattern, an important fact pattern, that a reversal would prohibit prosecution of. And that fact pattern is this. Congress is very much concerned, as was the Supreme Court in Ferber, about child pornography being used to blackmail victims. And so if you have a fact pattern in which someone's abusing a child repeatedly, and they find an opportunity, a spur-of-the-moment opportunity. Well, where's the blackmail here? I mean, this is the problem. I mean, you can't just envision circumstances that are far afield from what here. This comes down to the facts here. There's no blackmail. The problem, Your Honor, is that child pornography, why it's an issue of this being a permanent record, is that the victim knows it exists. It silences the victim. They don't reveal their abuse. And so if a perpetrator... You're asking, Your Honor, about... You're concerned about if you were to affirm or reverse the consequences of that, I'm submitting to you that a consequence of reversing here would inhibit the government's ability to prosecute someone who creates child pornography in order to continue perpetrating more child sex abuse. And that is very much in the ambit of the statute. Congress, in the Senate report in 1996, specifically called that harm out as one of the reasons it wanted to eliminate all instances of child pornography. You've got one law after another. If there's any area of law that has multiple statutes with a great number of very severe criminal sanctions, it's child pornography. We see a lot of these cases, and they're really bad actors. And the statutes come down on them and come down on them hard. And that's as it should be because it's an odious activity, perfectly odious. But the question you always have is whether you just... When you have something like this, where society has a legitimate abhorrence of a particular offense, the question you have to ask yourself is, do we just sweep why? Do we just sweep everybody under that view of social abhorrence to the point where we take a statute and have it cover almost anything? And so you have to ask yourself, there is a danger where you deal with abhorrent activity to just bend the rules and go after anybody. And people get swept up in this kind of thing far out of proportion to any kind of misconduct that they've committed. And the reason they get swept up in it is because of a general abhorrence of the crime rather than the particular circumstances that attended this particular proceeding. And this person is... What he did was not good. It was horrible. It's criminal. It can be criminalized. But I just think when we... things that are the subject of social abhorrence, you do have to be just a little bit careful in that not everybody gets swept up. Counsel, maybe you can describe to us the trial and the evidence that was presented that you think supports the conviction here. Judge Miles, I would like to, but I believe my time has now expired. I think that you can answer the question. We spend a lot of time questioning. Thank you. So in terms of the evidence, we believe that the evidence, even under a significant or motivating purpose, which, again, we disagree is the standard. But even under that standard, we believe we presented overwhelming evidence of that. And there are three buckets you can put the evidence into. One is what occurred before. One is what occurred during. One is what occurred after. So before, there was the evidence of the defendant online, communicating in online chats with others, speaking out sexual images to these people to create sexual images for him, which is similar to the decision out of the, I believe it was the First Circuit, in which it was a husband and wife had produced sexual images before, and the jury was told that the jury properly read that prior creation of sexual images with the defendant's wife into his intent in having sex and creating a video with a minor. You also have the images that were taken immediately before and after the sex video, in this case, was created, which we submit is evidence of the defendant's intent to create a series of images. He wanted to document both the before and the after that he could memorialize the entirety of the sexual experience. And then, of course, you have what happened during the sexual act, which by the defendant's own admission, he said that he was in the middle of sex and then asked the minor if he could do the video, and then he backtracked and maybe didn't ask her, but he grabbed his phone and she asked, what are you doing? And then he told her what he was doing. And then finally, you have the discussional line about the sex video after the fact, in which the defendant bragged about creating the sex video and then lastly, going back to the middle of the sex act, the video itself is very important because it shows panning, it shows videography. So this is very different than Palomino Coronado. It dealt with one undeleted still image. This is a video in which the defendant starts with the head chest of the victim and then pans down and focuses on his penis penetrating the minor's vagina for about five seconds and then he pans back up. And so our position is putting all those facts together in addition to the fact that Your Honor mentioned about the time it would have taken to open the phone and use it, show that he certainly had as one of his significant or motivating purposes to create this video. The conduct that was the basis for the count and that was enumerated in the indictment as the factual basis for the count was the 19-second video, the iPhone 19-second video, correct? That is the child pornography charges case. That's correct. Yeah, that's what we're focused on. I mean, there may be, as Judge King pointed out, there may be all kinds of 404B evidence and the like, but what the indictment, the factual recitation in the indictment and the basis for the conviction and the basis for the count was the 19-second video. Correct, Your Honor. That's the only child pornography at issue in this case. That's what I thought. And all this other evidence was, all these other things that you pointed to just now were introduced to prove what that 19-second video was. That's right, Your Honor. So as was pointed out... What the intent was? I'm sorry, Your Honor. Sorry, go ahead. Thank you. I was going to say, as was pointed out in Palomino-Cornado, to understand intent, we have to get inside the defendant's head and often that's going to be circumstantial evidence. In this case, we do have a little bit of direct evidence with the defendant's own statement, but the rest of the evidence I just described is the circumstantial evidence that should be properly considered in construing the government's favor to find that he did have the requisite purpose to have sex with the minor. And you take the position that the facts here are distinguishable from those in Palomino. Very much so, yes, Your Honor. And why is that a challenge? Well, to start with, in Palomino-Cornado, what was at issue was a single still image that had been deleted. And so just the very nature of the child pornography is distinguishable in which we're dealing with a video. And in the video, you can see, you get a sense of what the videographer here, the defendant's intent was. But it was a 19-second video. It was a 19-second video that was never published or distributed. That's correct, Your Honor, but there's no requirement for publishing or distribution. As has been recognized, Congress can properly regulate even locally produced child pornography, for which there is no intention of ever distributing it. Again, because the concern is... Well, you have to ask, you know, in part what producing here, but in terms of Palomino versus Coronado, I hope you're not suggesting that we can draw a dispositive difference from that precedent, depending on whether the brief depiction was a film or a photograph, because the statute says transmitting a live visual depiction. And I'm not sure that that language allows you to distinguish between a film and a photograph. I thought Palomino-Coronado was a very powerful precedent here, and I don't think it's that easily distinguished, to be quite honest with you. And on that point, maybe you can continue trying to distinguish them, because I think that's a fair comparison, at least for us. And that is the circuit precedent on it, and if it's not distinguishable, then we are going to have to reverse. So we have, as you pointed out, the first distinction, which may or may not make it legally distinguishable. Are there other distinctions between this case and our prior precedent? Yes, there are. But before I address those, let me address the live visual depiction comment that Judge Wilkinson made. We didn't charge under that prong the statute. That prong of the statute is not at issue here. But turning back to Palomino-Coronado and how our facts are different. So we mentioned already how it was the video versus the image. It's also true, in this case, we had a statement from the defendant, which did not exist in Palomino-Coronado. We also have the defendant bragging online after the video was created, another fact that didn't exist in Palomino-Coronado. You also have the photos that were taken both before and after, immediately before and after the sex video was taken. And again, I don't think the argument was made in Palomino-Coronado, but we are making the argument here that those sex pictures, both before and after, are very much like Morales de Jesus, the First Circuit decision I mentioned previously, in which the defendant's taping of his sexual activity with his wife could lead a reasonable jury to believe that he also engaged in sexual activity. You may fasten upon what you think are those distinguishing characteristics, but to me, they kind of pale before the similarity with this case in Palomino-Coronado, because both Al-Prasad and this case involve the same basic point of being a single, brief, single visual depiction. And it seemed to me we were saying in that case that we can't extend that statute that far to a brief, single visual depiction. And so, yeah, you can point to some things that you think are different, but it seems to me that they pale behind the underlying similarity. In both cases involve a very brief visual depiction, which wasn't produced with elaborate equipment and which wasn't disseminated, and those similarities seem to me to overshadow the differences to which you pointed. Maybe it shouldn't influence me, but it does. The fact that there's a 15-year minimum sentence for this kind of thing, that's rough. Counsel, I think that Judge Wilkinson has very well set out the one side. I want to be sure that I have everything that you say suggests the other side, and you don't have to repeat anything you said. I just want to be sure I have in front of me everything you rely on distinguishing this from our earlier precedent. Yes, Your Honor. Your Honor, I would like to make three points in that sense. The first is, looking at Palomino Coronado itself, the language from that statute, this court said in that case, to be sure, the situation might well present itself where only one photograph was taken, but where there was other evidence of purpose, and we do not hold that sufficiency challenge would necessarily fail in that instance. And so, I've submitted to the court that that is this case. It is a one video, granted, but there is other evidence of purpose. Secondly... And here, you had to get into all that, because as I recall, and I think Judge Monson and I were on that case, Judge Gregory wrote a statement, I think. That's correct. It was a guilty plea case. This is a trial. That was a guilty plea. And this is a trial. Your Honor, I believe it's incorrect. I'm looking at page 130 of the decision, and it says the jury found Palomino Coronado guilty. Okay. All right. I wasn't right on that. That's fine. So, tell me your second and third point quickly. We're taking a long time here. Yeah, so the second point is that Congressman's intent here was a broad ban on the production of child pornography. That's from Marquise Grillo. So, applying the case, applying the statute to defend this case fits within congressional intent. And the last point I'd like to make, just to respond to Judge Wilkinson's concern about the mandatory minimum, I would note that Judge Ellis did say that he thought the mandatory minimum was appropriate, regardless of the statute in this case. So, I don't think he would agree that the mandatory minimum was an inappropriate result. And was this on reliance in stuff in the pre-trial report? Correct. It is from the pre-trial report where we detailed and the court accepted four different instances in which the Senate was chatting with children who were 12, 14, and 16, including the six-year-old, which was immediately proceeding from January 2016 to November 2017, immediately proceeding, the video in this case, in which he asked this 16-year-old, who identified herself as 16 years old, if she was a virgin, told her he was horny, had a nine-inch sausage, and he wanted to video chat with her and wanted her to provide pics, he wanted to make love to her, et cetera. The fact that this defendant went from online chats to then driving three and a half hours to West Virginia to pick up the victim in this case and then brought her back, had sex with her, for the purpose of creating a video is a significant federal interest and, in our view, merits the prosecution and the ultimate sentence that was imposed. Thank you. You've answered my question. Judge King, do you have any questions? No. I'm fine. All right. Let's hear from the appellant by way of rebuttal. Yes, Your Honor. Thank you. May it please the court, I would like to trickle back initially to talk about the progression of Ms. McCauley's case to the Hewitt case. In that case, the government argued for that the a-purpose was the appropriate standard. This court said in Thompson that significant or motivating is the appropriate purpose. The government then agreed that that was the appropriate standard in Hewitt three weeks ago, and the jury was instructed, and that's not how Ms. McCauley was instructed. The government has agreed on this, that motivating is at the very least how the jury should be instructed as it relates to the a-purpose. Our position is... Counsel, I think that's a really good point. What do the other circuits say? The other circuits have taken two approaches, Your Honor. Some of them have defined purpose by what it is. It isn't the full purpose. It isn't the exclusive purpose. They've never really said what it is. They just kind of tell you what it's not. The Second Circuit and the Eighth Circuit have said dominant purpose, and they may have said dominant purpose because they decided, and I think correctly, that Congress's intent was to punish the kind of behavior that encourages the abuse in the first instance. That's the federal interest. It's criminalizing, punishing that behavior which encourages the abuse. That's why the statute is written with the purpose, and Your Honors are correct. 15 years is a long time with no affirmative defense as relates to age. It is a furious, draconian statute that requires a furious, intense purpose. Let me go back to that dominant purpose. Let me ask you a question about that. You say two circuits say a dominant purpose. Yes, sir. In front of that, do they have the word B or the word A? Well, I can tell you, Your Honor, that the most recent decision from the Fourth and the Eighth Circuit, this is the instruction that they read. And I'll just read the purpose part of it. And it says, rather, the government is required to prove that one of the defendant's dominant purposes was to produce a visual depiction of such conduct. So they use the phrase one of the defendant's dominant purposes. So they acknowledge there can be more than one purpose. They acknowledge that it doesn't have to be the sole or exclusive purpose, but they tell you that it has to be the dominant purpose, which is, in my humble opinion, significant or motivating, which this court sanctioned in Thompson is not that different than dominant. I'm not sure I could really parse out the difference between significant or motivating and dominant. That is, what you're saying is it has to be something more than A. Like, that's not what they wrote. Like, this is a serious punishment, a serious statute. You're not contending that it has to be the exclusive purpose. I'm not, Your Honor. But I'm not, but it has to be the exclusive purpose, but it has to be... But it has to be certainly something more than a purpose. It has to be something more than a multitude or three or four or whatever. The government said one in ten, which could be one percent. I mean, one in ten doesn't assume all the purposes are weighted equally. It could be one percent. That's what the government... So, where do you get this from the statutory language? The statutory language as it relates to purpose, Your Honor. Is that your question? Yeah. How does it tell us what you think the purpose requirement should be? Your Honor, I think we start with the plain language of the statute. And the plain language says the. It says the. And to judge Wilkinson, I think that maybe this is a good way to answer the question. If I go house shopping with my wife and we look at ten houses, and I say after it's all over, honey, the fifth house is the house for us. And she looks at me and says, yes, that is definitely a house. I say, no, no, this is the house for us. And she says, that is one of ten houses that we have looked at today. We are not saying the same thing. We are not saying the same thing. Now, when I say the house, do I mean this is the house to the exclusion of all other known houses in the universe? Maybe. But what I am definitely saying is that the house is, this is the dominant house of the ones that we've looked at. This is the significant house we've looked at. This is the house that's gonna motivate me to go to the bank and get a mortgage and buy it. That's what the means. At the very minimum, that's what the means. And that's way more select area than a 15-year mandatory loan. Well, one of the things that interests me is that we might think we're just quibbling over the definite or the indefinite article with the V and A. And, you know, if that's all it was, then you could, you know, do Henderson versus Kibbe and say that, you know, minor instructional errors shouldn't be dispositive. But here, the difference between V and A, I think, bears on the whole intention of Congress in this statute. Because when you say the purpose, that indicates a seriousness of conduct with respect to child pornography that a purpose doesn't. And when you say the purpose, what it's saying is we want this statute to ensnare serious offenders. And we don't want to put A because if we say a purpose, we'd be sweeping in all kinds of other people who may not be serious. This is what we're after with the purpose are serious offenders. It's more than just a quibble over the definite and indefinite article. The V purpose elevates the purpose of the statute to more serious offenses. Okay, can I ask you, what was the instruction that the government agreed to most recently? Your Honor, yes. If you could give me a second. I'm sorry. Hold on. Just the language about purpose. What it said was motivating purpose, Your Honor. So what the court instructed in that case was that there was an argument back and forth about what it should be and it said it needs to be a motivating purpose. It didn't say significant, but it's... A motivating purpose or B motivating purpose. It has to be A motivating purpose. Which is reflective of what this court is holding in confidence. And that was in a case in the same district, the same judge, and a different prosecutor, but the same U.S. Attorney's Office. The same U.S. Attorney's Office. Mr. Barang was not part of the Hewlett case, but the other prosecutor, Ms. Bills, was the same prosecutor in Mr. McCauley's case and in Mr. Hewlett's case. So while Mr. Barang wasn't coincidental to both cases, the same attorney for the U.S. Attorney's Office was the attorney for both of those cases. How about Mr. Barang tried this case? Mr. Barang and Ms. Bills tried Mr. McCauley's case, Ms. Bills and Ms. Smith by looking at... There was a common prosecutor. There was a common prosecutor. I've got a question for you before you sit down. The government says that Palomino is distinguishable, materially distinguishable. Correct? That's what the government said, yes. That's what the government said? Yes. Right, exactly. He said that. But you then have to say Palomino is controlling precedent. Is that right? That's correct. I believe that this is a sufficiency evidence. This is a sufficiency of the evidence case in much the way that Palomino is. And to judge it, to Judge Moss's earlier question about was there a cause, I do believe there has to be intent beforehand. There could be a cause to indicate a separate sexual act, but there was no cause in this case. Okay, but Bruce, you can directly answer the question since we're spending a long time on this case. And so the question that Judge King put to you is that you regard the Palomino case as circuit precedent, right? Yes, Your Honor, I do. And maybe Judge King has another question. Yeah, and I did rely on that, Your Honor, yes. All right. Yes, Your Honor. Yes, Your Honor, I'm sorry. I'm unclear about that. Can I? I'm running out of time. I wanted to say because it seemed to me Judge King's question warrants an answer, not just of course you believe it's controlling precedent, but just tell us why you believe it's controlling precedent. Because I believe that Palomino and Coronado established that as a specific intent crime, that you cannot conflate the voluntary nature of taking the video with the intent necessary to engage in sexual activity. The facts in Palomino are virtually identical to this case. Logan made no statement regarding his purpose for engaging in sexual activity. He gave no instructions. He didn't actively conceal the videotaping. There was no purposeful conduct surrounding the use of specific photograph or video equipment. He did nothing to indicate that it was planned or staged. He engaged in repeated sexual activity and took only one video fragment, and the two had already initiated their activity when he made the spontaneous decision to kind of grab his phone and record the 19-second video. Those facts are on all fours with Palomino. Well, I would have thought those facts you would say we distinguish this from Palomino, but if you say it's on all fours, fine. Those are the facts that I'm bringing to the opinion. Those are the facts from Palomino that he didn't demonstrate it. He had no specialized equipment. He didn't discuss it ahead of time. But you said the two cases are on all fours. Then I would think they would come out the way you don't want them to come out if they really were on all fours. That's fine. I think I understand your position. Don't worry. Maybe I missed it. The reverse for sufficiency of evidence, I think, is a lack of evidence here. But even if we can't get to the Rule 29, Logan was the only one who got an instruction on aid purpose. It's the only way the court was, the government was able to get a conviction. The judge instructed them one way. They came back with a question on engagement. He instructed them on aid purpose. And then Mr. Stavridis and I didn't even leave the courtroom before the jury came back with a guilty verdict. Two final points I want to make. The government said Mr. McCauley had enough time to ride in the car to realize that she was under 14. Mr. McCauley suffers from traumatic brain injury. He is in the 0.01% intellectually of people his age. He may be 22 years old chronologically. He is nowhere near that in actual reality. And if the government is allowed, if the court goes along with the government and says fine for what  wants to do, this is what's coming. A mentally challenged 18 year old high school student is going to fall in love with someone who's 17 who lies to her and says she's 18 as well. They're going to have sex because that's what teenagers sometimes do. In the middle of one of their sex acts, this guy's going to record 10 seconds of it because 1% of him says, you know what, I'd like to look at this afterwards. 99% of him says, no, that's not what I want to do. But there's 1% and that 1% gives him a 15 year mandatory sentence. That's what flows from this decision. In 1817, it may sound extreme, but from talking to the federal public defender in Newport or Norfolk, I can't remember, they're prosecuting a 19 year old who has sex with a 16 year old. It's not that far away. This is not what the statute was designed to do. Depurpose means depurpose because it reflects the seriousness of dealing with people whose job and profession or motivation is creation of child pornography. It is not aimed at the mentally deficient 22 year old who takes a 19 second video with his iPhone. That is not what the statute says. If Congress wanted it to be that way, it would have said a purpose. It would have said any purpose. Depurpose may not mean exclusive, but it definitely means dominant. It has to be the motivating, significant, dominant motive for your engaging in sexual activity in the front end. That's what Thompson says. That's what the government agreed to. That's what the 8th circuit and the 2nd circuit say. So, everybody who has established a standard says that's the standard. And that's what this court said it got. We asked this court to reverse the conviction completely, factually, under any standard. Mr. McCaul is not guilty of intentionally engaging in sex to then record it, but at the very minimum. This case needs to be remanded for a retrial with a proper instruction. Mr. McCaul, as I said, is the only one who has not received the benefit of that instruction. Thank you. Judge Motz, do you have any further questions? I do not. Thank you. Judge King, do you have further questions? No, sir. Thank you. All right. We will take a brief recess and then commence our next case.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Robert B. King